IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL GASPERSON, ROSALIE GASPERSON, | ) ) ) |
| Plaintiffs, | ) ) ) No. 6:17-03272-CV-RK |
| v. | ) ) ) |
| PLANO SYNERGY HOLDINGS, INC., SYNERGY OUTDOORS, LLC, PRIMAL VANTAGE CO., INC., AMERISTEP, INC, | ) ) ) ) ) ) |
| Defendants. | ) |

## <u>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 69.) The Motion for Summary Judgment is fully briefed. (Docs. 70, 77, 81.) For the reasons below, the Motion for Summary Judgment is **DENIED**.

### Background

Plaintiffs Daniel and Rosalie Gasperson ("Plaintiffs") bring this action against Defendants stemming from a fall from the Ameristep Two-Man 15' Ladder Stand ("the Product"). The Product is a vaulted stand with corresponding ladder that is used to allow hunters to reach an aerial position for hunting game. Plaintiff Daniel Gasperson ("Mr. Gasperson") was injured when he fell from the Product. Plaintiffs argue the design of the Product and corresponding warnings were defective. Defendants argue the Product and corresponding warnings are not defective, and Plaintiffs were injured because they failed to follow the Product's warnings and instructions. Plaintiffs are citizens of Missouri and bring this action against all Defendants for strict liability, negligence, violations of the Missouri Merchandising Practices Act ("MMPA"), breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and loss of consortium.[1]

---

[1] Plaintiffs are citizens of Missouri, and all Defendants hold citizenships outside of Missouri. (Doc. 1.) The Court has diversity jurisdiction over this matter in that the parties have diverse citizenship

The Complaint provides the following allegations. Defendant Primal Vantage designs, manufactures, assembles, tests, markets, promotes, advertises, and distributes the Product. After manufacture, the Product is sent to Defendant Ameristep for distribution to retailers. Defendant Synergy Outdoors, LLC acquired a controlling ownership interest in Defendant Ameristep. Defendant Plano Synergy Holdings, Inc. acquired all assets of Defendant Synergy Outdoors, LLC. Mr. Gasperson purchased and installed the Product on August 8, 2015. Mr. Gasperson purchased the Product based on the representation that it was new and could be used for its intended purpose. Plaintiff reviewed the instruction manual, safety manual, and watched the safety DVD included with the Product. While installing the Product, the ladder section of the Product ("ladder stand") failed, and Mr. Gasperson was injured. Mr. Gasperson brings this action to recover damages as a result of his injuries including past and future medical expenses, mental and physical pain and suffering, loss of earnings, impaired earning capacity, permanent disability, disfigurement, and other general and special damages. Plaintiff Rosalie Gasperson ("Mrs. Gasperson") brings this action to recover damages including loss of consortium, mental anguish and emotional distress, and other general and special damages.

The Complaint contains the following causes of action: Count I: Strict Liability – Product Defect; Count II: Strict Liability – Failure to Warn; Count III: Negligent Failure to Warn; Count IV: Negligent Design and Manufacture; Count V: Violations of the MMPA; Count VI: Breach of Implied Warranty of Fitness for a Particular Purpose; Count VII: Breach of Implied Warranty of Merchantability; and Count VIII: Loss of Consortium.

**Legal Standard**

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "[A] dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In considering a motion for summary judgment, the court does not weigh the evidence, make credibility determinations, or

---

and the amount in controversy is in excess of $75,000. *Id.* The parties do not dispute that Missouri law applies.

attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted). "Once the movant fulfills its responsibility of informing the court of the basis for its motion, identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 857 (8th Cir. 2018) (quotation marks and citations omitted).

## Discussion

### A. Validity of Plaintiffs' Expert Bill Munsell

Before addressing the substantive claims in the motion and its briefing, the Court will address Defendants' assertion that Plaintiffs' expert Bill Munsell's report is invalid. Defendants argue the report is invalid for two reasons. First, Defendants argue the report is unsworn, thus inadmissible. "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005). The Court issued a Show Cause Order presenting this deficiency, and Plaintiffs supplemented the record. (Docs. 89, 90.) This deficiency is now cured; therefore, Plaintiffs' expert report is admissible at the summary judgment stage. *See DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 825-26 (8th Cir. 2009) ("Subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment.") (internal quotation marks and citation omitted).

Next, Defendants seek to exclude or limit Mr. Munsell's opinion testimony because Defendants allege his testing was faulty and fails to reveal any design defect. Defendants have also filed a Motion in Limine to limit or exclude Mr. Munsell's opinion testimony. (Doc. 71.) As discussed in the Court's ruling on Defendants' Motion in Limine, Mr. Munsell is an appropriate expert under *Daubert* and Fed. R. Evid. 702, and his opinions in support of Plaintiffs' position are proper for the jury to consider. (Doc. 91.)

3

### B. Count I: Strict Liability - Design Defect

To recover on a strict liability theory for a design defect, Plaintiffs must establish that

> (1) The defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

"[A] product's design is deemed defective, for purposes of imposing liability, when it is shown by a preponderance of the evidence that the design makes the product unreasonably dangerous." *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 377 (Mo. banc 1986). "Proximate cause is whether the defect in the product is the 'cause or act of which the injury was the natural and probable consequence.'" *Pitman v. Ameristep Corp.*, 208 F. Supp. 3d 1053, 1062 (E.D. Mo. 2016) (citation omitted). "The determination of probable cause is usually a question left for the jury, unless there is an intervening cause." *Id.* at 1063.

Defendants argue there is no evidence that a defect in the Product was the proximate cause of Mr. Gasperson's accident, and the cause of Mr. Gasperson's accident was Plaintiff's misuse of the Product and failure to follow warnings and instructions provided. In support of their argument, Defendants rely on their expert George Saunders' opinion. Mr. Saunders opined that the accident was the result of Mr. Gasperson's failure to: a) follow the manufacturer's published weight limits, b) properly assemble the Product by placing the installation strap in the wrong location, c) select a tree of the appropriate size, d) utilize additional people to support his ladder stand, and e) wear a safety harness.

Plaintiffs argue there is a genuine issue of material fact whether Mr. Gasperson's actions caused the accident. In support, Plaintiffs point to their expert Bill Munsell's report. In direct contradiction to Mr. Saunders' report, Mr. Munsell's report found that neither Mr. Gasperson's choice of tree, positioning of the Product, applying the installation straps, adjusting the stabilizer bar, applying the tiedown rope, nor attempting to apply the ratchet strap before the harness strap were causative in of the accident. Plaintiffs argue a genuine issue of material fact exists as to whether the safety harness would have prevented the injuries because Mr. Gasperson testified that he would not have had time to fasten the harness after reaching the height before the stand collapsed; Defendants' expert Lorne Smith opined that if Plaintiff did not have time to secure the harness once he stepped on the foot platform, the safety harness would not have prevented the fall;

4

and Mr. Munsell opined that there is no evidence that the accident would not have occurred had Mr. Gasperson worn a safety harness. Mr. Munsell also opined the design of the Product was defective because no tool to measure the diameter of the tree was included with the Product and it was very difficult to apply the ratchet straps without contacting the seat platform. Finally, Plaintiffs also argue in the alternative that Mr. Gasperson may have comparative fault but the amount of which remains a jury question.

The Court finds that a genuine issue of material fact exists as to whether Mr. Gasperson was damaged as a direct result of the Product's condition at the time of sale. Both parties have presented conflicting expert opinions as to whether a design defect was the cause of Plaintiffs' injuries. *See Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 936 (Mo. App. 1996) (the issue of causation is suited for the fact finders as reasonable minds here could differ as to causation of injuries); *Pitman*, 208 F. Supp. 3d at 1604 (causation is a question usually left for the jury).

**C. Count II: Strict Liability: Failure to Warn**

To establish a failure to warn claim under strict liability, Plaintiffs must show that the injury resulted from a failure to provide an adequate warning of a danger inherent in the use of the Product; however, Plaintiffs are also required to prove a causal connection between the lack of a warning and the injuries. *Nesselrode*, 707 S.W.2d at 392. In other words, Plaintiffs must establish that the Product without an adequate warning caused Plaintiffs' damages and an additional or modified warning would have altered Plaintiffs' behavior. *Johnson v. Medtronic, Inc.*, 365 S.W.3d 226, 232 (Mo. App. 2012). The key issue here is whether the information included with the Product "effectively communicates to the consumer or user the dangers that inhere in the product during normal use and the dangerous consequences that can or will result from misuse or abnormal misuse of the product." *Nesselrode*, 707 S.W.2d at 382. In Missouri, it is presumed that a warning will be heeded by the user. *Johnson*, 365 S.W.3d at 232. Defendants can be liable for failure to warn even if the Product does not have any design defect. *Pitman*, 208 F. Supp. 3d 1053, 1062.

Defendants argue the manufacturer provided adequate warnings and instructions that warned the user how to properly use, install, and assemble the Product. Defendants argue that because Mr. Gasperson testified that he understood the warnings and installation instructions but chose not to follow them, Plaintiffs cannot show that additional warnings or modified warnings would have altered Plaintiffs' behavior.

5

Plaintiffs argue Defendants' warnings and instructions are inadequate because they do not alert the user to avoid placing their weight on the seat while reaching around the tree to attach their harness or the ratchet straps. Mr. Munsell opined that the Product's instructions did not clearly instruct the user to prevent any portion of their weight from being applied to the seat which could result in failure of the Product. Mr. Munsell explained that it is difficult to apply the ratchet strap without contacting the seat platform and that the manufacturer did not supply any method or equipment to reliably avoid contact with the seat platform when applying the harness or ratchet straps. The safety DVD depicts users kneeling and laying on the seat platform while affixing the ratchet strap as well as attaching their safety harness. Further, Mr. Munsell states that the video of Mr. Saunders testing the Product shows him leaning heavily on the seat as he attaches the ratchet straps and his harness. Mr. Gasperson testified that he did not sit or put weight on the seat platform. Mr. Munsell also testified that the warnings were inadequate because the warnings did not indicate what type of knot to use or that the knot would be subject to significant loads. Finally, Mr. Munsell testified the warnings were inadequate because the warnings do not explain that selecting a tree with the proper diameter is crucial in the installation process.

Both parties have presented competing expert opinions and testimony as to whether Defendants' warnings and instructions were inadequate and caused the collapse, or whether the cause of Plaintiffs' injuries were due to Mr. Gasperson's error in following the warnings and installation instructions. Accordingly, a genuine issue of material fact exists as to whether the Product has an inadequate warning, and if so, whether an adequate warning would have altered Plaintiffs' behavior.

### D. Counts III, IV: Negligent Design Defect, Negligent Failure to Warn

Defendants' Motion for Summary Judgment only addresses design defect and failure to warn under a strict liability theory. Because Defendants do not address Plaintiffs' negligence claims and Defendants bear the burden of proof on summary judgment, these claims survive summary judgment.

### E. Count V, VI, VII: Violations of the MMPA, Breach of Implied Warranty of Fitness for a Particular Purpose, and Breach of Implied Warranty of Merchantability

Plaintiffs argue the Product's packaging is misleading to consumers. In support, Plaintiffs offer Mr. Gasperson's testimony that the "500 pound" representation contained on the packaging was deceiving and misleading. Plaintiffs also offer Defendants' expert Mr. Smith's testimony; however, this testimony does not opine directly as to whether the packaging was misleading.

6

Defendants argue that Plaintiffs have not met their burden to provide evidence to establish that a genuine issue of material fact exists because Plaintiffs have only provided Mr. Gasperson's testimony in support of their position that the packaging is misleading to consumers. Because these claims involve the same arguments, they will be addressed at the same time.

The MMPA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." RSMo. § 407.020.1 To succeed on a claim under the MMPA, a plaintiff must establish the following elements:

> (1) The purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA.

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 310-11 (Mo. App. 2016).

To recover under the theory of implied warranty of merchantability, a plaintiff must prove: (1) a merchant sold goods; (2) the goods were not merchantable at the time of the sale; (3) injury and damage to plaintiff or his property were proximately caused or caused in fact by the defective nature of the goods; and (4) the seller was given notice of the injury. *Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 962 (W.D. Mo. Oct. 27, 2017).

A claim for breach of implied warranty of fitness for a particular purpose exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." RSMo. § 400.2-315.

The Court acknowledges the only evidence Plaintiffs provide in support of their claims under the MMPA and breach of warranties of merchantability and fitness is testimony by Mr. Gasperson. However, considering the deferential standard used with summary judgment motions and construing all doubts in favor of Plaintiffs, the Court finds there is a genuine issue of material fact as to whether the warning was misleading; therefore, this is an issue of fact left for the jury.

### F. Count VIII: Loss of Consortium

Because the Court finds a genuine issue of material fact remains, Mrs. Gasperson's Loss of Consortium claim survives summary judgment. *See Sumpter v. Allergan, Inc.*, 2017 U.S. Dist.

7

LEXIS 200563, at *3 (E.D. Mo. Dec. 6, 2017) (a loss of consortium claim is derivative from the injured spouse's claim and depends on the validity of the underlying claim).

## Conclusion

After careful consideration, the Court finds that a genuine issue of material fact exists as to whether the Product's design was defective and whether the warnings were adequate. Accordingly, Defendants' Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

                                                  s/ Roseann A. Ketchmark
                                                  ROSEANN A. KETCHMARK, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATED: April 3, 2019